UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEVAUGHN DORSEY,

    Petitioner,

   v.

UNITED STATES OF AMERICA,

    Respondent.

Case No. C14-938RSL

ORDER ON PETITIONER'S
28 U.S.C. § 2255 PETITION
AND RELATED MOTIONS

## I.  INTRODUCTION

  This matter comes before the Court on petitioner's 28 U.S.C. § 2255 petition and motions to amend the petition (Dkts. # 1, # 4, # 9, # 11, # 18, # 22, # 23, # 24, # 27, # 36, # 39, # 50, # 51, # 56, # 68), petitioner's motions for other relief (Dkts. # 28, # 52, # 59), and the government's submissions (Dkts. # 55, # 70). Given the numerous filings in this matter, the Court provides the table below summarizing the following information: docket number, filing party, filing description, date of filing, counseled or pro se status, noting date (applicable only to motions), and impact of any previous stays.

| Dkt. # | Filing Party | Description | Date of Filing | Pro Se or Counsel | Noting Date or Stay Status |
|---|---|---|---|---|---|
| 1 | Petitioner | § 2255 Petition | 6/24/14 | Counsel | Previously stayed, but stay was lifted* |
| 4 | Petitioner | Motion to Amend Petition | 7/11/14 | Counsel | |
| 9 | Petitioner | Motion to Amend Petition | 9/19/14 | Pro Se | |
| 11 | Petitioner | Motion to Amend Petition** | 9/29/14 | Pro Se | |
| 18 | Petitioner | Motion to Amend Petition | 6/24/16 | Counsel | |

ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
AND RELATED MOTIONS - 1

| Dkt. # | Filing Party | Description | Date of Filing | Pro Se or Counsel | Noting Date or Stay Status |
|---|---|---|---|---|---|
| 22 | Petitioner | Motion to Amend Petition** | 11/30/17 | Pro Se | Petition renoted for 7/31/2020. |
| 23 | Petitioner | Motion to Amend Petition | 11/30/17 | Pro Se | |
| 24 | Petitioner | Motion to Amend Petition | 12/4/17 | Pro Se | |
| 27 | Petitioner | Motion to Amend Petition** | 12/21/17 | Pro Se*** | |
| 28 | Petitioner | Motion for Discovery | 12/21/17 | Pro Se*** | |
| 36 | Petitioner | Motion to Amend Petition | 1/6/20 | Counsel | 3/19/20 |
| 39 | Petitioner | Motion to Amend Petition** | 2/3/20 | Pro Se | 2/21/20 |
| 50 | Petitioner | Motion to Amend Petition** | 5/1/20 | Pro Se | Unnoted |
| 51 | Petitioner | Motion to Amend Petition** | 5/11/20 | Pro Se | Unnoted |
| 52 | Petitioner | Motion to Withdraw Argument regarding Plea Agreement | 6/15/20 | Pro Se | 7/3/20 |
| 55 | Government | Omnibus Response to § 2255 Motion | 6/25/20 | Counsel | N/A |
| 56 | Petitioner | Motion to Amend Petition | 6/26/20 | Pro Se | 7/24/20 |
| 59 | Petitioner | Motion for Extension of Time to File Reply to Omnibus Response to Petition | 7/27/20 | Pro Se | 8/7/20 |
| 67 | Petitioner | Reply to Omnibus Response to Petition | 3/30/21 | Counsel | N/A |
| 68 | Petitioner | Motion to Amend Petition** | 7/19/21 | Counsel | 8/6/21 |
| 70 | Government | Motion for Leave to File Late Response and Response to Dkt. # 68 | 8/23/21 | Counsel | 9/3/21 |
| 71 | Petitioner | Reply to Dkt. # 70 | 9/2/21 | Counsel | N/A |

*On January 13, 2020, the Court lifted a previous stay in this matter. See Dkt. # 38 (lifting stay imposed by Dkt. # 31, which stayed Dkts. # 4, # 9, # 11, # 18, # 22–24, # 27–28). This was not the Court's first stay of this matter. On November 21, 2017, the Court lifted an earlier stay. See Dkt. # 19 (lifting stay imposed by Dkts. # 8, # 12).

**Many of petitioner's motions are not titled or characterized as motions to amend per se, but they operate as such for purposes of the Court's analysis. Two asterisks are used to identify these motions.

***The vast majority of petitioner's motions were filed pro se when petitioner was represented by counsel, but two were filed while he was unrepresented. Three asterisks are used to identify these two motions.

Having reviewed the memoranda of the parties and the record contained herein, the Court finds as follows:

## II.   BACKGROUND

**A.   Conviction and Petitioner's First New Trial Motion**

The Court adopts the following facts from the Ninth Circuit's opinion in United States v. Dorsey, 677 F.3d 944, 948–51 (9th Cir. 2012):

### A

Between July of 2007 and May of 2008, Dorsey led a conspiracy to traffic in stolen motor vehicles. To steal motor vehicles, Dorsey and his co-conspirators did "key switches" at auto dealerships. Members of the conspiracy would ask an auto salesperson to start a vehicle. One person would distract the salesperson while another would switch the key in the vehicle with a key from a similar vehicle. The members would later return to the dealership and use the real key to drive the vehicle off the lot. After stealing vehicles, Dorsey and his co-conspirators removed their vehicle identification numbers ("VIN") and replaced them with other VINs gained from wrecking yards. They then registered the stolen vehicles with the Washington Department of Licensing using fraudulent documents, and finally either sold for profit or abandoned the vehicles.

As part of this conspiracy, Dorsey enlisted Martine Fullard to help falsely register a stolen Buick LaCrosse. At Dorsey's direction, Fullard registered the LaCrosse in her name at the Department of Motor Vehicles. Dorsey gave Fullard about $200 and told her the car would be registered in her name no longer than two weeks. Fullard saw the LaCrosse only once.

In January of 2008, Seattle police began an investigation of the vehicle-trafficking conspiracy. Dorsey learned of the investigation, and sometime after Fullard registered the LaCrosse in her name, Dorsey called Fullard and told her that the police would probably contact her. The police in fact interviewed Fullard in March of 2008. On May 7, 2008, Fullard was served with a grand jury subpoena in connection with the vehicle-trafficking investigation. She was scheduled to appear before the grand jury on May 15, 2008.

Dorsey knew that Fullard had been served with a grand jury subpoena. A few days before Fullard's scheduled grand jury appearance, Dorsey told William Fomby that Fullard was going to testify before the grand jury and said, "Man, I got to do something, man. I'm about to go back to Cali." Dorsey had previously been convicted of conspiracy to traffic in stolen motor vehicles and operating a chop

shop and had served his sentence at a federal prison in California. Dorsey also told Diamond Gradney that Fullard and Tia Lovelace had received subpoenas and accused Gradney of being subpoenaed and not telling him. And, presumably referring to Fullard, Dorsey said to Shawn Turner, "That bitch better not testify against me."

On the night of May 13, 2008, two days before Fullard's scheduled grand jury appearance, Fullard was cooking in the kitchen of her West Seattle apartment. At about 10:29 pm, seven shots were fired into the apartment through a window over the kitchen sink. Fullard's boyfriend, mother, and two children, then ages eight and ten, were also in the apartment. Three bullets struck Fullard and one struck her older son. Then two more shots were fired through a different window near the front door; they did not strike anyone. The gunshot wounds of Fullard and her son were not fatal.

Minutes after the shooting, between 10:33 pm and 10:42 pm, Dorsey made eight calls to police detectives from his cell phone. Detective Thomas Mooney received the first of Dorsey's calls to him that night just after he got the dispatch about the shooting at Fullard's apartment, at 10:29 pm. Mooney answered, and Dorsey told him that he was "at 23rd and Union" in Seattle and found a man that Mooney was looking for. Mooney said that he had to go investigate a shooting and hung up. Then Dorsey called back and repeated that he was at 23rd and Union.

But here is the problem with Dorsey's alibi: Dorsey was not at 23rd and Union in the minutes after 10:29 pm on May 13, 2008. There is a dominant cellular tower at 23rd and Union, and Dorsey's cell phone call was not transmitted through that tower that night. Rather, between 9:16 pm and the time of the shooting, Dorsey's cell phone hit off of a cellular tower almost directly behind Fullard's apartment eight times and hit off of no other cellular tower during that period. Dorsey made no calls from his cell phone between 10:07 pm and 10:29 pm. At 10:33 pm, four or five minutes after the shooting and the time at which Dorsey called Mooney, Dorsey's cell phone hit off of a cellular tower near the east end of the West Seattle Bridge, far from 23rd and Union and only a few minutes' driving distance from Fullard's apartment.

## B

The government filed a fourteen-count indictment against Dorsey and other participants in the vehicle-trafficking conspiracy. The government then filed a twenty-count superseding indictment and a twenty-two-count second superseding indictment against Dorsey. The second superseding indictment charged Dorsey

with one count of conspiracy to traffic in motor vehicles or motor vehicle parts in violation of 18 U.S.C. § 371 (Count 1); two counts of operating a chop shop in violation of 18 U.S.C. § 2322(a)(1) and (b) (Counts 2 and 3); seventeen counts of trafficking in motor vehicles in violation of 18 U.S.C. § 2321(a) (Counts 4 through 20); one count of witness tampering in violation of 18 U.S.C. § 1512(a)(1)(A), (1)(C), (2)(A) and (2)(C) (Count 21); and one count of discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) (Count 22). Counts 21 and 22 were based on the government's allegation that Dorsey shot into Fullard's apartment to prevent her grand jury testimony.

Dorsey pleaded guilty to Counts 1 through 20, accepting his criminal liability for the charges of conspiracy, vehicle-trafficking, and operating a chop shop. But while agreeing to these serious offenses, Dorsey maintained his innocence on the counts relating to the shooting of planned grand jury witness Fullard. The case proceeded to trial on Counts 21 and 22.

Before trial, the government moved *in limine* to admit testimony from William Fomby, a co-conspirator who had pleaded guilty, that before the shooting he had seen Dorsey with a Glock firearm. After the pretrial motions hearing but before opening statements at trial, Mouy Harper, an ex-girlfriend of Dorsey's, told the prosecution that she, too, had seen Dorsey with a gun before the shooting. The district court ruled that Fomby's testimony and Harper's testimony were admissible. The district court also ruled that the government's exhibit of a three-gun montage, from which Harper had identified a Glock as the gun that she had seen Dorsey possessing, was admissible.

Dorsey at trial stressed the lack of direct evidence against him. There were no eyewitnesses, no gun, no fingerprints, and no DNA linking him to the shooting. Dorsey contended that of several possible theories for the shooting, the police pursued only the theory that he was the shooter. But the government presented circumstantial evidence showing that Dorsey had definite knowledge of Fullard's receipt of a grand jury subpoena and a strong motive to prevent her grand jury testimony. The government also presented Dorsey's cell phone records and cellular tower data to show Dorsey's attempts to call the police to establish that he was someplace he was not at the time of the shooting. Technology was fatal to Dorsey's alibi because he used a cell phone that showed his proximity to the scene of the shooting, not to where he said he was when he called. That Dorsey tried to create a fake alibi was not merely ineffective, but also stands high in the hierarchy of evidence tending to show guilt.

ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
AND RELATED MOTIONS - 5

In addition, Fomby testified that before the shooting he saw Dorsey retrieve a black, bulky gun that he thought was a Glock from the trunk of Harper's car. Harper testified that she recalled Dorsey taking something from the trunk of her car, that she once saw Dorsey with a charcoal gray gun, and that she had identified the first gun in the three-gun montage shown to her by the police—a Glock .40 caliber with a black polymer frame—as a gun that looked like the gun she saw. A firearm and toolmark examiner testified that the combined characteristics of the cartridge cases and bullets recovered from Fullard's apartment were consistent with a Glock or similar type of firearm.

During cross-examination Detective Paul Suguro remarked that Dorsey "did it." The district court at once told the jury to disregard the comment and admonished Suguro in front of the jury. Dorsey moved for a mistrial. The district court denied the motion because it concluded that Dorsey was not prejudiced by Suguro's comment.

After an eight-day trial, the jury found Dorsey guilty on both counts. Dorsey moved for a new trial based on the admission of the testimony of Fomby and Harper that Dorsey possessed a gun before the shooting, and on Detective Suguro's comment that Dorsey "did it." [ ] The district court denied the motion. The district court sentenced Dorsey to forty-eight years in prison: five years on Count 1, thirteen years each on Counts 2 and 3, ten years each on Counts 4 through 20, and thirty years on Count 21, all to run concurrent; and eighteen years on Count 22, to run consecutive to Counts 1 through 21.

## B.   Petitioner's Direct Appeal

Petitioner filed a timely direct appeal, and the Ninth Circuit affirmed his conviction. Dorsey, 677 F.3d 944. Petitioner made the following arguments: (1) it was error to admit William Fomby and Mouy Harper's testimony regarding petitioner's possession of a "Glock type" handgun; (2) the government improperly vouched for William Fomby's credibility when it elicited testimony on the truthfulness provisions of Mr. Fomby's plea agreement; (3) the government improperly vouched for Detective Suguro's comment that petitioner "did it"; and (4) it was error to hold that the maximum statutory sentence was life imprisonment. Id. The Ninth Circuit held that it was not error to admit Mr. Fomby and Ms. Harper's testimony, that defense counsel opened the door for the prosecutor to elicit testimony on the truthfulness

1  provisions of Mr. Fomby's plea agreement, that Detective Suguro's comment was harmless

2  error, and that the maximum sentence was indeed life imprisonment. Id.

3  **C.     Petitioner's Second New Trial Motion**

4          On May 31, 2013, petitioner filed another motion for a new trial and he requested an

5  evidentiary hearing. CR Dkt. # 520. Petitioner had argued that newly discovered evidence

6  demonstrated that the government knowingly used false testimony at his trial and that the

7  government violated its obligations under Brady v. Maryland, 373 U.S. 83 (1963). CR Dkt.

8  # 520 at 27–28. With respect to petitioner's first argument, petitioner's evidence included:

9  interview statements by Ms. Harper and Shawn Turner recanting their trial testimony and

10 claiming that their prior statements were coerced by investigating officers; phone records for a

11 phone number that petitioner claimed to be using at the time of the shooting; and Tammy

12 Jackson's affidavits. Id. at 5–8, 10–22. The Court concluded that neither Ms. Harper nor Mr.

13 Turner's recantations were credible, their trial testimony was consistent with the testimony of

14 several other trial witnesses, and the government presented sufficient independent evidence of

15 petitioner's guilt (e.g., cell phone record evidence demonstrating that petitioner was in close

16 proximity to Ms. Fullard's home on the night she was shot). CR Dkt. # 583 at 8–12. The Court

17 also determined that the phone records petitioner offered in support of his motion were not

18 newly discovered, and even if they were, the Court did not interpret them as proving that the

19 government knowingly used false testimony, and petitioner failed to establish a reasonable

20 probability that the outcome of the trial would have been different without the testimony in

21 question. Id. at 12–14. Ms. Jackson's affidavits were similarly unavailing. The Court concluded

22 that the affidavits were not newly discovered, and even if they were, petitioner failed to establish

23 that he could not have discovered the testimony sooner, particularly where he claimed he knew

24 that one of the phone numbers at issue in the trial was not his. Id. at 14–16. Moreover, even if

25 petitioner had been diligent in pursuing this evidence, the Court nevertheless found that Ms.

26 Jackson's testimony probably would not have changed the outcome of the trial. Id. at 16.

27         As for the second argument, regarding the government's Brady obligations, petitioner

28 contended that the government failed to disclose the identity of Malika Wells. CR Dkt. # 520 at

ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
AND RELATED MOTIONS - 7

8–10. Petitioner submitted an investigation log report prepared by the Washington State Patrol, which demonstrated that the prosecution knew of Ms. Wells' identity as of June 2, 2010, but because petitioner failed to explain when the prosecution disclosed the log to his counsel, the Court was unconvinced that the prosecution failed to disclose this evidence. CR Dkt. # 583 at 17–18. The Court also concluded that there was not a reasonable probability that had this evidence been disclosed, that the result would have been any different. Id. at 18.

The Court denied the motion, and the Ninth Circuit affirmed. United States v. Dorsey, 781 F. App'x 590 (9th Cir. 2019). Petitioner argued that the Court should have excluded cell tower data because the government obtained the data with a court order, and the Supreme Court had since decided that such searches violate the Fourth Amendment. Id. at 591. The Ninth Circuit held that the good faith exception applied to the Fourth Amendment because the government reasonably relied upon the Stored Communications Act when it obtained the cell tower data. Id. at 592. Petitioner had also argued on appeal that the Court abused its discretion in denying his motion for an evidentiary hearing. Id. The Ninth Circuit held that the Court did not abuse its discretion and accepted the Court's reasoning that even absent the testimony of the recanting witnesses, it was not probable that the jury would have reached a different verdict. Id.

**D.**     **Motion under 28 U.S.C. § 2255 and Subsequent Procedural History**

On June 24, 2019, petitioner, through counsel, filed a motion pursuant to 28 U.S.C. § 2255. The petition raises three grounds for relief. Dkt. # 1. Numerous motions to amend were filed after that by petitioner's various counsel (Dkts. # 4, # 18, # 36, # 68) or by petitioner pro se (Dkts. # 9, # 11, # 22, # 23, # 24, 27, # 39, # 50, # 51, # 56). Petitioner also filed a pro se motion for discovery (Dkt. # 28) and a pro se motion to withdraw an argument regarding his plea agreement (Dkt. # 52). Following the government's filing of its Omnibus Response (Dkt. # 55), petitioner filed a pro se motion for extension of time to file a reply to this response (Dkt. # 59), and petitioner's counsel eventually filed a belated Reply to the Government's Omnibus

1  Response (Dkt. # 67).[1] Subsequently, petitioner's counsel filed another motion to amend (Dkt.

2  # 68), and the government filed a motion for leave to file a late response to this most recent

3  motion to amend (Dkt. # 70). Rather than recite a detailed timeline of these numerous filings,

4  the sequence of filings is conveyed in the table the Court supplied above.

5  
6  ### III.   PETITIONER'S MOTIONS FILED PRO SE WHILE REPRESENTED BY COUNSEL (DKTS. # 9, # 11, # 22, # 23, # 24, # 39, # 50, # 51, # 52, # 56, # 59)

7  Almost all of petitioner's pro se pleadings were made while he was represented by

8  counsel.[2] The Court previously made petitioner aware that such hybrid representation is not

9  permitted and referred petitioner to the relevant Local Civil Rule ("LCR"), which states as

10  follows:

11  [w]hen a party is represented by an attorney of record in a case, the party cannot
12  appear or act on his . . . own behalf in that case, or take any step therein, until after
     the party requests by motion to proceed on his . . . own behalf, certifies in the
13  motion that he . . . has provided copies of the motion to his . . . current counsel and
     to the opposing party, and is granted an order of substitution by the court
14  terminating the party's attorney as counsel and substituting the party in to proceed
15  pro se.

16  Dkt. # 12 at 2 (Order citing LCR 83.2(b)(4), which is now found at LCR 83.2(b)(5)). Although

17  the Court did not strike petitioner's pro se pleadings filed up to that point (Dkts. # 9, # 11), the

18  Court specifically instructed petitioner to "henceforth, act in accordance with all Local Civil

19  Rules, including Rule 83.2(b)(4)." Dkt. # 12 at 3. Because petitioner has continued to

20  contravene Local Civil Rules,[3] despite the Court's specific instruction on October 31, 2014, the

21  
22  ─────────────

[1] Petitioner's counsel did not seek leave to file a belated Reply to the Government's Omnibus
23  Response (Dkt. # 67), which was due July 27, 2020. Dkt. # 54; LCR 100 (mandating that "the time for
     filing answers and replies, if any, shall be as directed by order of the Court"). Nevertheless, the Court
24  considers petitioner's Reply despite its tardiness in light of both petitioner's pro se attempt to seek an
     extension of time while represented by his former counsel, Dkt. # 59, as well as the intervening change
25  of counsel, see Dkts. # 60–66 (motions, notice, orders, etc., regarding petitioner seeking new counsel
     and the Court permitting the withdrawal of petitioner's former counsel).
26  
27  [2] Dkts. # 27–28 are the only pro se filings made while petitioner was unrepresented.

28  [3] All but one of the motions (Dkt. # 39) fail to certify that copies of the respective motions have
     been provided to petitioner's current counsel, and petitioner's filings do not appear to request that the

ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
AND RELATED MOTIONS - 9

1   Court strikes petitioner's pro se motions filed after October 31, 2014, when petitioner was

2   represented by counsel at the time of filing. Therefore, the Court strikes the following motions

3   from the docket: Dkts. # 23, # 24, # 39, # 50, # 51, # 52, # 56, # 59. Because the Court

4   previously permitted Dkt. # 9 and Dkt. # 11 to remain on the docket, see Dkt. # 12 at 2–3, and

5   because Dkt. # 22 represents petitioner's curing of the signature defect present in Dkt. # 11,[4]

6   these three motions (Dkts. # 9, # 11, # 22) are analyzed further below. See infra Part V.

7   ### IV.   REQUEST TO STAY (DKT. # 70)

8          On June 25, 2020, the government's Omnibus Response suggested that the Court

9   "shoulder consider staying this matter pending a resolution of [United States v. Begay[5]] and

10  [United States v. Orona, Case No. 17-17508 and United States v. Borden, No. 19-5410]," but

11  only if the Court found petitioner's Begay-related claim timely and potentially meritorious. Dkt.

12  # 55 at 31. On July 22, 2020, petitioner, through his former counsel, Ms. Elliott, moved to stay

13  the proceedings pending the resolution of the government's rehearing petition in Begay. Dkt.

14  # 57. Recently, petitioner moved to withdraw this motion to stay, Dkt. # 72, which the Court

15  granted, Dkt. # 73.

16         Although petitioner has now changed his position regarding staying the case, the

17  government maintains in its most recent filing that if the Court does not deny petitioner's

18  motions for habeas relief, then the Court should stay the case until resolution of Begay.[6] Dkt.

19

20

21  Court terminate counsel and permit petitioner to proceed on his own behalf, but rather, they suggest that
    petitioner seeks merely to add his own pro se filings into the mix while retaining the benefit of legal

22  representation.

23         [4] The Court previously ordered petitioner to cure Dkt. # 11's signature defect. Dkt. # 12 at 3–4.

24         [5] On October 27, 2021, the Ninth Circuit ordered that Begay be reheard en banc, and it vacated
    the three-judge panel opinion. United States v. Begay, 15 F. 4th 1254 (9th Cir. Oct. 27, 2021) (mem.).

25
           [6] The Assistant United States Attorney ("AUSA") who had filed the government's Omnibus
26  Response to petitioner's motions retired in June 2021, and petitioner's July 2021 motion to amend did
    not come to the attention of the government's new counsel until petitioner's counsel emailed it in mid-
27  August to the AUSAs who tried petitioner. Dkt. # 70 at 1–2 n.2. Given the circumstances, the Court
    GRANTS the government's motion for leave to file a late response (Dkt. # 70).

28
    ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
    AND RELATED MOTIONS - 10

# 70 at 3. Because the Court is persuaded by the government's arguments to deny the petition, see infra Part V.D, the alternative relief of a stay is DENIED as moot.

## V.   MOTIONS TO AMEND (DKTS. # 4, # 9, # 11, # 18, # 22, # 27, # 36, # 68) AND MERITS OF PETITION (DKT. # 1)

Petitioner has a variety of claims sprinkled throughout his numerous motions. One of those claims concerns petitioner's "crime of violence" theory ("COV claim"). Below, the Court first addresses the government's arguments regarding petitioner's non-COV claims and then addresses the COV claim.

### A.   Timeliness of the Non-COV Claims

A one-year statute of limitations applies to all § 2255 petitions. 28 U.S.C. § 2255(f). This one-year period runs from one of four different benchmarks. See 28 U.S.C. §§ 2255(f)(1)–(4).[7] As relevant for the non-COV claims, this one-year time-period commences when the conviction becomes final. See 28 U.S.C. § 2255(f)(1). Because petitioner sought a writ of certiorari following the Ninth Circuit's affirmance of his conviction and sentence, his conviction became final when that certiorari petition was denied on June 24, 2013. Dorsey, 677 F.3d 944, cert. denied, 570 U.S. 919 (June 24, 2013); see Clay v. United States, 537 U.S. 522, 527 (2003) ("Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."). Petitioner filed his original § 2255 petition via counsel on June 24, 2014. The government does not dispute the timeliness of the initial filing (claims 1–3), Dkt. # 55 at 10, and the Court concludes that claims 1–3 are timely. With respect to the claims raised in the various motions to amend after the original petition (hereinafter, "supplemental claims"), these claims must either satisfy the "relation back" standard set out in Fed. R. Civ. P. 15(c), see Mayle v. Felix, 545 U.S. 644 (2005), or have some independent basis in § 2255(f) to establish timeliness. While leave to

---

[7] The Court discusses the third benchmark in its analysis of the COV claim's timeliness. See infra Part V.D, n.25.

1  amend is generally freely granted, it may be denied if the proposed amendment would be

2  futile. Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995).

3       The government argues that the vast majority of the supplemental claims fail to relate

4  back to the original petition and that therefore the motions to amend should be denied. Petitioner

5  disputes this point and contends that the supplemental claims relate back by asserting "a claim

6  or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be

7  set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The Supreme Court has stated

8  that "[s]o long as the original and amended [habeas] petitions state claims that are tied to a

9  common core of operative facts, relation back will be in order" per Fed. R. Civ. P. 15(c)(1)(B).

10 Mayle, 545 U.S. at 664. An amended petition does not relate back where it "asserts a new

11 ground for relief supported by facts that differ in both time and type from those the original

12 pleading set forth." Id. at 650.

13      To determine whether the supplemental claims relate back to the original filing, the Court

14 must examine the facts supporting the claims in the original petition and the facts supporting the

15 claims contained in the subsequent motions to amend. The original petition puts forward three

16 claims: (1) that petitioner's due process rights were violated because Detective Donovan Daly

17 coerced Ms. Harper to testify falsely against him; (2) that petitioner's due process rights were

18 violated because Detective Daly coerced Mr. Turner to testify falsely against him; and (3) that

19 trial counsel was ineffective for failing to contact and seek testimony from Michelle McNeair,

20 an alibi witness who could account for petitioner's location at the time of the shooting.[8]

21

22      [8] Petitioner and the government number the claims differently. Petitioner's "Ground One" is

23 synonymous with claim 1, petitioner's "Ground Two" is synonymous with claim 3, and petitioner's
   "Ground Three" is synonymous with claim 2. See Dkts. # 55 at 34–36, # 67 at 3–4. The Court adopts the

24 government's numbering system because it finds the government's approach more comprehensive and
   easier to follow than petitioner's approach. Petitioner's Reply uses the following labels, Grounds 1–4,

25 Pro Se Grounds 1–6, and Grounds 6–11, but these labels do not accurately distinguish between which

26 grounds are pro se and which are not. See, e.g., Dkt. # 67 at 8 (discussing "Ground Six," which appears
   to align with petitioner's pro se ground/claim "(B): Ineffective assistance of counsel for failing to obtain

27 Mr. Dorsey's Motorcycle invoice from the service department at downtown Harley Davidson." Dkt. # 9-

28 1 at 2).

1   Notably, petitioner does not argue that his amended claims relate back to the due process claims
2   he maintains in claims 1–2. Rather, petitioner's relation-back argument relies upon claim 3.

3         Claim 3 focuses on facts regarding trial counsel's failure to contact Ms. McNeair to
4   testify as an alibi witness as to petitioner's location around the time of the shooting. Specifically,
5   the claim concerns allegations that Ms. McNeair met petitioner at a Burger King to purchase a
6   Ford Explorer on May 13, 2008, between 10:00 a.m. and 10:30 p.m. for about fifteen minutes,
7   that petitioner's attorney failed to adequately investigate and consider Ms. McNeair as an alibi
8   witness, including her ability to "cast doubt" as to whether petitioner was in the area of Ms.
9   Fullard's residence at the time of the shooting. Dkt. # 1 at 10–11.

10         Petitioner contends that the arguments in his motions to amend "stem from Petitioner's
11   core allegations of ineffective assistance of counsel based on counsel's failure to investigate and
12   thus, 'relate back' to the original filing." Dkt. # 67 at 13. In other words, petitioner traces the
13   supplemental claims back to the ineffective assistance of counsel ("IAC") argument in claim 3.
14   The Ninth Circuit has recognized, however, that claims do not arise out of the same core of
15   operative facts merely because they each involve an IAC claim. See Schneider v. McDaniel, 674
16   F.3d 1144, 1151 (9th Cir. 2012) (rejecting the petitioner's argument "that the assertion of any
17   claim of ineffective assistance of appellate counsel based upon the failure to raise an issue or
18   issues on direct appeal thereafter supports the relation back of any and every claim of ineffective
19   assistance of appellate counsel that petitioner thereafter may decide to raise"). Upon reviewing
20   the facts underlying petitioner's numerous supplemental claims, the Court finds that the vast
21   majority of claims fail to relate back to claim 3.

22       **1.    Dkt. # 4 (Claims 4–7[9])**

23   None of the supplemental claims put forward in Dkt. # 4 share core facts with claim 3:

24       • Claim 4: IAC for failing to call Ms. Jackson to testify that she, not petitioner,
25         made calls to Mr. Fomby from a "7743" phone number the night of the shooting.
26         Dkt. # 4 at 2. At trial, the prosecution suggested that Mr. Fomby had received
         numerous calls the night Ms. Fullard was shot and that petitioner used a "7743"

27

28       [9] Claims 4–6 appear to correspond with petitioner's "Ground Four." Dkt. # 67 at 4–5.

phone number to call Mr. Fomby. Id. at 3. Ms. Jackson's affidavit states, however, that she was the one who called Mr. Fomby. Id. at 2; CR Dkt. # 528 at 16.

- Claim 5: IAC for failing to investigate the phone records for the "7743" phone number. Dkt. # 4 at 3. Petitioner argues that the "7743" phone records reveal that Mr. Fomby was lying about the calls he allegedly received from him because the number would have been blocked such that Mr. Fomby would have been unable to identify the phone number. Id.

- Claim 6: IAC for failing to obtain Diamond Williams-Gradney's phone records. "At trial, Ms. Williams-Gradney testified that sometime in March of 2008[,] Mr. Dorsey had called her and accused her of receiving a grand jury subpoena and not revealing that information to him." Dkt. # 4 at 4. According to petitioner, however, Ms. Williams-Gradney's phone records reflect that petitioner never called her, though she did call him in March of 2008. Id.

- Claim 7: Fourth Amendment claim that petitioner's privacy rights were violated when the government obtained cell site location data for his cell phone provider without a warrant or his consent.[10] Dkt. # 4 at 4–7.[11]

**2.  Dkt. # 9-1 (Claims 8–14)[12]**

None of the supplemental claims listed in Dkt. # 9-1 share core facts with claim 3:

- Claim 8: IAC for failing to obtain Detective Mooney's phone records.

---

[10] Notably, petitioner's Reply neglects to characterize claim 7 as one of the grounds for habeas relief. See Dkt. # 67.

[11] The government's index lists two Fourth Amendment claims: 7 and 30. At one point, petitioner characterized this Fourth Amendment argument as "Ground Five." Dkts. # 4 at 4, # 27 at 1. Because claim 30 merely reiterates claim 7's Fourth Amendment argument with new authority, for the same reason that claim 7 does not relate back (i.e., core facts are not shared with the claims in the original petition), neither does claim 30. Even if this Fourth Amendment argument had been raised in a timely manner, it would still fail because petitioner raised this claim in the appeal from the denial of his new trial motion, and the Ninth Circuit rejected it. Dorsey, 781 F. App'x at 592.

[12] Dkt. # 9-1 refers to these as claims (A)–(H) respectively, though claim (D) was not included in the government's table and does not appear below. This claim concerns the ineffective assistance of appeal counsel for failing to raise the issue regarding vouching for Detective Mooney's credibility during closing. It shares no core facts with the claims in the original petition.

- Claim 9: IAC for failing to obtain an invoice regarding petitioner's motorcycle from the Downtown Harley Davidson Service Department to impeach the testimonies of Detective Mooney and Mr. Fomby.[13]

- Claim 10: IAC for failing to object to prosecutor's vouching for Detective Mooney's credibility during closing.

- Claim 11: IAC for failing to call Arthur Wilcher as a witness.

- Claim 12: IAC for failing to call Tiffany Walton as a witness.[14]

- Claim 13: IAC for failing to call Officer Steve Kaffer as a witness.[15]

- Claim 14: IAC for failing to seek a trial continuance to develop Ms. Wells as a witness.

### 3.   Dkts. # 11 and # 22 (Claims 15–24)

Only one of the government-numbered supplemental claims petitioner included in Dkts. # 11, # 22 arguably shares core facts with claim 3, claim 15:

- Claim 15: The government characterizes claim 15 as follows: "There was no witness who placed Dorsey at the scene of the shooting and the evidence should have been developed to show he was selling a Ford Explorer to Michelle McNeair at the time." Dkt. # 55 at 35 (citing Dkts. # 11 at 7, # 22 at 7). In reviewing petitioner's motion to amend containing this claim, the Court finds that petitioner more specifically argues that there was a "lack of evidence" and "want of proof" for conviction,[16] and petitioner also mentions that he was selling a car to Ms.

---

[13] Petitioner's Reply referred to this claim under the heading "Ground Six." Dkt. # 67 at 8–9. Although petitioner cited Dkt. # 24 as the source for this claim, and the Court is striking Dkt. # 24, this claim is also found in Dkt. # 9-1.

[14] Petitioner's Reply referred to this claim under the heading "Ground Ten." Dkt. # 67 at 10. Although petitioner cited Dkt. # 24 as the source for this claim, and the Court is striking Dkt. # 24, this claim is also found in Dkt. # 9-1.

[15] As stated in the immediately preceding footnote, petitioner's Reply referred to this claim under the heading "Ground Ten." Dkt. # 67 at 10. Although petitioner cited Dkt. # 24 as the source for this claim, and the Court is striking Dkt. # 24, this claim is also found in Dkt. # 9-1.

[16] Petitioner's reference to Ms. McNeair is somewhat confusingly contained in a larger section that petitioner characterizes as "Pro Se Ground One," Dkts. # 67 at 6, # 11 at 7, which petitioner frames as an argument regarding the sufficiency of the evidence, Dkt. # 67 at 6 ("Here, Petitioner essentially argues that there was insufficient evidence to convict him . . .."). Assuming, arguendo, that this type of

ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
AND RELATED MOTIONS - 15

McNeair during the period of time Ms. Fullard was assaulted. Dkt. # 22 at 6–7. Although the allegation regarding Ms. McNeair shares facts with claim 3, see Dkt. # 1 at 10–11, it does not articulate a clear legal claim regarding Ms. McNeair's potential testimony separate and apart from claim 3 and does not need to be separately analyzed. See infra Part V.B.2 (addressing the merits of claim 3).

- Claims 16–17: IAC for failing to seek a continuance based on the late discovery regarding telephone records for the 7743 phone number, or in the alternative, excluding all evidence related to calls from the 7743 phone number. Dkt. # 22 at 9–13.[17]

- Claim 18: IAC for failing to seek a continuance to investigate Mr. Turner's statements and to develop Ms. Wells as a witness. Dkt. # 22 at 18–19.

- Claim 19: The government withheld Brady material that would have established that Detective Mooney's testimony was false. Dkt. # 22 at 20–21.

- Claim 20: The government improperly vouched for its witnesses. Dkt. # 22 at 33–34.[18]

- Claim 21: IAC for failing to obtain Ms. Williams-Gradney's phone records to establish that she was not truthful. Dkt. # 22 at 40–42.[19]

- Claims 22: IAC for failing to obtain testimony from Paul Dervin and Nonis Clayton regarding petitioner's location at the time of the shooting. Dkt. # 11 at 51.

---

sufficiency of the evidence claim is timely and not procedurally barred, it fails on the merits. There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). That standard is easily met here. See Dorsey, 781 F. App'x at 592 (holding that the Court did not err in determining that "even absent the testimony of the recanting witnesses, it was not probable that the jury would have reached a different verdict," given the cell tower data evidence). "Pro Se Ground Five," regarding petitioner's argument that there is not any evidence to support his conviction, Dkt. # 67 at 7, fails for the same reason.

[17] Claims 16–17 appear to overlap in part with what petitioner refers to as "Pro Se Ground Two." Dkt. # 67 at 6.

[18] Claim 20 appears to overlap in part with what petitioner calls "Pro Se Ground Four." Dkt. # 67 at 7.

[19] Claim 21 appears to overlap with what petitioner calls "Pro Se Ground Six." Dkt. # 67 at 7.

ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
AND RELATED MOTIONS - 16

- Claim 23: IAC for failing to introduce evidence regarding the lawsuit that petitioner had filed against "Detective Saucman."[20] Dkt. # 11 at 52.

- Claim 24: IAC for failing to call Officer Kaffer to testify regarding Mr. Wilcher's demeanor following the shooting. Dkt. # 11 at 52–53.

It appears that in addition to claims 15–24 listed above, numbered by the government, petitioner also presents a due process claim based on various prosecutorial misconduct, Dkts. # 22 at 24–33 (listing allegations), # 67 at 7 ("Pro Se Ground Three"). One of the ways in which petitioner contends prosecutors engaged in misconduct was in presenting false testimony of Ms. Harper and Mr. Turner. Dkt. # 22 at 29. To the extent that this unnumbered pro se claim relates back to claims 1–2, the Court addresses the merits of this claim below. See infra Part V.B.1. The remainder of the claims fail to relate back.

### 4.    Equitable Tolling

Petitioner argues in the alternative that if the Court finds that petitioner's amendments do not relate back, that the Court should apply the doctrine of equitable tolling. Dkt. # 67 at 15–16. The period of limitations may be equitably tolled when the petitioner shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way [of timely filing]." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). Petitioner briefly discusses his diligence, but petitioner does not refer to any extraordinary circumstances for the Court to consider. Dkt. # 67 at 15–16. The Court concludes that petitioner has failed to bear the burden of establishing the elements required for equitable tolling, and the Court declines to find the amendments timely.

---

[20] Claim 23 appears to overlap with what petitioner calls "Ground Eight." Dkt. # 67 at 9–10. Although petitioner cited Dkt. # 24 as the source for this claim, and the Court is striking Dkt. # 24, this claim is also found in Dkt. # 11.

ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
AND RELATED MOTIONS - 17

1   **B.   Merits of the Timely Non-COV Claims**

2         Petitioner's original petition did not support claims 1–3 with declarations or documents.

3   See Dkt. # 1. Even if the Court entertains these claims based on subsequent filings or the filings

4   associated with petitioner's second new trial motion,[21] his claims still fail.

5         **1.   Claims 1–2 and Unnumbered Pro Se Claims Regarding Alleged False**

6   **Testimony by Ms. Harper and Mr. Turner**

7         For claims 1–2, petitioner is only entitled to relief if he can establish that the testimony in

8   question was coerced, Williams v. Calderon, 48 F. Supp. 2d 979, 1001, (C.D. Cal. 1998), and

9   that the testimony rendered his trial so unfair as to violate due process, Williams v. Woodford,

10  384 F.3d 567, 593 (9th Cir. 2004). As for the unnumbered claims regarding alleged

11  prosecutorial misconduct in presenting false testimony by Ms. Harper and Mr. Turner, Dkt. # 22

12  at 29, petitioner is only entitled to relief if he can prove that (1) the testimony was actually false;

13  (2) the prosecution knew or should have known that the testimony was false; and (3) the

14  testimony was material. Jackson v. Brown, 513 F.3d 1057, 1071–72 (9th Cir. 2008).

15        In the Court's order denying petitioner's motion for a new trial, the Court found that Ms.

16  Harper's recantation was not credible, and that petitioner failed to establish that Ms. Harper's

17  trial testimony was false. The Court observed Ms. Harper's in-court testimony and did not find

18  her sworn affidavit more credible than the sworn testimony she provided at trial. CR Dkt. # 583

19  at 9. Because petitioner has not established that Ms. Harper's testimony was coerced or false,

20  claim 1, and the unnumbered prosecutorial misconduct claim related to Ms. Harper's testimony,

21  necessarily fail.[22]

22

23        [21] The government argues that petitioner should not be permitted to re-litigate claims 1–2 here

24  because they are merely recycled versions of arguments that petitioner lost in his second new trial
    motion. See Dkt. # 55 at 14–15 (citing United States v. Jingles, 702 F.3d 494 (9th Cir. 2012)). "Under

25  the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously
    decided by the same court, or a higher court, in the same case." Jingles, 702 F.3d at 499 (citing

26  Richardson v. United States, 841 F.2d 993, 996 (9th Cir. 1988)). Even assuming, arguendo, that the

27  Court is not precluded from examining claims 1–2, petitioner will not prevail.

28        [22] Additionally, the Court reflected that Ms. Harper's trial testimony regarding seeing petitioner
    with a gun was consistent with the testimony of several other witnesses, including Mr. Fomby and

ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
AND RELATED MOTIONS - 18

1   Similarly, the Court's order denying petitioner's motion for a new trial also addressed

2   Mr. Turner's recantation. The Court found that Mr. Turner's recantation was not credible. CR

3   Dkt. # 583 at 12. Because petitioner has failed to demonstrate that Mr. Turner's testimony was

4   coerced or false, claim 2, and the unnumbered prosecutorial misconduct claim related to Mr.

5   Turner's testimony, must fail.[23]

6   ## 2.   Claim 3 Regarding Ms. McNeair's Potential Alibi Testimony

7   Petitioner is only entitled to relief under claim 3 for IAC if he can show (1) inadequate

8   performance by counsel, and (2) prejudice resulting from that inadequate performance.

9   Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy part one of the Strickland test,

10  petitioner must demonstrate that "in light of all the circumstances, the identified acts or

11  omissions were outside the wide range of professionally competent assistance." Id. at 690. And

12  petitioner must overcome a presumption that "the challenged action might be considered sound

13  trial strategy." May v. Shinn, 954 F.3d 1194, 1203 (9th Cir. 2020) (quoting Strickland, 466 U.S.

14  at 689). With respect to part two of the Strickland test, petitioner "must show that there is a

15  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

16  would have been different." Strickland, 466 U.S. at 694.

17  Even assuming, arguendo, that petitioner could satisfy part one of the Strickland test,

18  petitioner cannot demonstrate part two. Petitioner has not demonstrated that there is a reasonable

19  probability that the result of the proceeding would have been different if counsel had called Ms.

20  McNeair to testify as an alibi witness as to petitioner's location around the time of the shooting.

21  Ms. McNeair's affidavit is not definitive as to the time of her alleged meeting with petitioner.

22  Ms. McNeair claims that she arrived at "around" 10:00 p.m. at a Burger King restaurant in

23  

24  Detective Tyson Sagiao. CR Dkt. # 583 at 10. This lends further support for the conclusion that claim 1

25  fails where the testimony did not render the trial so unfair as to violate due process.

26  [23] The Court also reasoned that Mr. Turner's testimony, which was used to demonstrate that

27  petitioner was aware of Ms. Fullard's grand jury subpoena, was corroborated by the trial testimony of several other witnesses, including Ms. Gradney-Williams, Mr. Fomby, Detective Mooney, and Kizzy

28  Wright. CR Dkt. # 583 at 12. Given the independent evidence presented against him at trial, the testimony did not render the trial so unfair as to violate due process. Claim 2 fails on the merits.

ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
AND RELATED MOTIONS - 19

1   Seattle, that petitioner "showed up about 10 or 15 minutes later," that the "transaction took

2   about 10 or 15 minutes," and then he drove off "towards the West Seattle Bridge." Dkt. # 14-1

3   at 89–90. The approximate timing and the location of the Burger King, 3301 4th Ave South,

4   Seattle, do not preclude the possibility that petitioner was the shooter. If for example, Ms.

5   McNeair arrived at 9:55 p.m., petitioner showed up at 10:05 p.m., and petitioner left at 10:15

6   p.m., petitioner still could have arrived at Ms. Fullard's home (5625 Delridge Way SW, Seattle,

7   Dkt. # 459 at 678) by 10:29 p.m.to commit the shooting. See Googlemaps, https:/maps.google.

8   com (last visited Nov. 12, 2021) (mapping the Burger King address to Ms. Fullard's home

9   address and reflecting a drive of "typically 14–18 min" on a Tuesday at 10:15 p.m. when not

10  using the West Seattle Bridge).[24] If, however, Ms. McNeair arrived at 10:05 p.m., petitioner

11  showed up at 10:20 p.m., and petitioner left at 10:35 p.m., that would align better with

12  petitioner's alleged alibi. The problem for petitioner is that this alleged alibi remains

13  inconsistent with the cell phone tower evidence used to establish that petitioner's cell phone

14  calls between 9:16 p.m. and the time of the shooting were transmitted off of a cellular tower

15  almost directly behind Ms. Fullard's apartment. And as the Ninth Circuit recognized, the

16  strongest evidence against petitioner was these cell tower records. Dorsey, 677 F.3d at 950; see

17  also Dorsey, 781 F. App'x at 492 (holding that the Court did not err in determining that even

18  absent the testimony of the recanting witnesses, it was not probable that the jury would have

19  reached a different verdict, given the cell tower data evidence). Therefore, the Court concludes

20

21          [24] As far as the Court is aware, the West Seattle Bridge was operational at the time of the

22  shooting. See Dkt. # 14-1 at 90 (referring to petitioner driving "towards the West Seattle Bridge").
    Given that this bridge is currently closed, see West Seattle Bridge Closure, King County Metro (June 9,

23  2021) https://kingcounty.gov/depts/transportation/metro/programs-projects/transit-corridors-parking-
    and-facilities/west-seattle-bridge-closure.aspx (last visited Nov. 12, 2021) (reflecting that the West

24  Seattle Bridge is currently closed), the drive time would likely be even shorter than the 14–18 minute
    route currently recommended by Google Maps because when the bridge is operational, the travel

25  distance is far less. Mapquest, which appears to permit a user to calculate drive times using the West
    Seattle Bridge, reflects that it would take approximately seven minutes to use this bridge to get from the

26  Burger King to Ms. Fullard's residence. See Mapquest, https://www.mapquest.com/

27  directions/from/us/wa/seattle/98134-1902/3301-4th-ave-s-47.574049,-122.329172/to/us/wa/seattle/
    98106-1445/5625-delridge-way-sw-47.551132,-122.363009 (last visited Nov. 12, 2021).

28  ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
    AND RELATED MOTIONS - 20

1   that petitioner has not satisfied part two of the <u>Strickland</u> test and is not entitled to relief under

2   claim 3.

3   **C.**    **Summary of Motions to Amend Regarding the Non-COV claims**

4          To the extent that petitioner has offered non-COV claims in his motions to amend that

5   arguably relate back (i.e., unnumbered claims concerning prosecutorial misconduct regarding

6   alleged false testimony by Ms. Harper and Mr. Turner (relating to claims 1–2) and claim 15

7   (relating to claim 3)), the motions to amend are nevertheless futile because the underlying

8   claims, claims 1–3, lack merit, as described above. With respect to the other non-COV claims in

9   petitioner's motions, which are untimely (claims 4–14, 16–24, 30), these motions are also futile.

10   Therefore, the Court DENIES Dkts. # 1, # 4, # 9, # 11, # 22, # 27.

ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
AND RELATED MOTIONS - 21

1

**D.      Merits of the COV Claim**

2       The government argues that petitioner's COV claim is untimely and procedurally

3   defaulted. Dkt. # 55 at 13–14, 24–28. The Court presumes, for purposes of this order, that the

4   COV claim is timely[25] and that petitioner can overcome procedural default,[26] but the Court finds

5   that the COV claim fails on the merits.

6

---

7       [25] Section 2253(f)(3) provides that a 1-year limitation period shall run from, as relevant here,

8   "the date on which the right asserted was initially recognized by the Supreme Court, if that right has
    been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral

9   review." Id. The government acknowledges that United States v. Davis, 139 S. Ct. 2319 (2019) applies
    retroactively to cases on collateral review, Dkt. # 55 at 24, and there can be no dispute that petitioner's

10  assertion of the COV claim was made less than a year after the case was decided. Davis, 139 S. Ct. 2319
    (June 24, 2019); Dkt. # 36 (asserting the "Davis claim" on January 6, 2020). The government appears to

11  contend that the COV claim is not timely because (1) it is a second or successive § 2255 claim and (2)
    the claim is not asserting rights recognized by the Supreme Court. See Dkts. # 55 at 13 ("It is true that

12  the claim regarding the application of [Davis] . . . would be a timely claim under 28 U.S.C. § 2255(f)(3),
    if truly based on Davis and no prior motion had been filed."), # 70 at 3 ("Dorsey's argument . . . actually

13  depends on the Ninth Circuit's decision in Begay, not Borden.").
         With respect to the first argument regarding timeliness, because petitioner's earlier-filed petition

14  has not been finally adjudicated, the COV claim does not constitute a second or successive claim.
    Balbuena v. Sullivan, 980 F.3d 619, 635 (9th Cir. 2020), cert. denied sub nom. Balbuena v. Cates, 141

15  S. Ct. 2755 (June 14, 2021) (mem.). As for the second argument regarding timeliness, at least two
    district courts have found similar COV claims timely. See Whiting v. United States, No. 3:16-CR-64-02,

16  2021 WL 510152, at *1, 3 (M.D. Pa. Feb. 11, 2021) (finding claim timely where petitioner argued that
    his predicate offense did not qualify as a "crime of violence" under the "elements clause"), appeal filed,

17  No. 21-1482 (3d Cir.); Cole v. United States, Nos. 7:19-CV-8030-SLB, 7:03-CR-214-SLB-JEO-1, 2021
    WL 1597907, at *5 (N.D. Ala. Apr. 23, 2021) (same).

18
         [26] Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the
19  claim may be raised in habeas only if the petitioner can first demonstrate either "cause" and "actual
    prejudice," or that he is "actually innocent." Bousley v. United States, 523 U.S. 614, 622–23 (1998). The

20  government's position is that petitioner has procedurally defaulted the COV claim and cannot overcome
    that default. Petitioner did not directly address this issue. See Dkt. # 67. Because petitioner did not

21  attempt to present the COV claim in his direct appeal, see Dorsey, 677 F.3d 944, he has procedurally
    defaulted that claim. Various district courts have held that petitioners can establish both cause and actual

22  prejudice for failure to previously raise a Davis-based COV claim where the state of the law at the time
    of the respective petitioner's § 924(c)(3) conviction did not provide a reasonable basis for such a

23  challenge. See, e.g., United States v. Branch, No. 12-cr-00535-PJH-1, 2020 WL 6498968, at *2–3 (N.D.
    Cal. Nov. 3, 2020); Whiting, 2021 WL 510152, at *3; but see Granda v. United States, 990 F.3d 1272,

24  1286–88 (11th Cir. 2021) (holding that petitioner could not show cause in spite of the fact that "few, if
    any, litigants had contended that the § 924(c) residual clause was unconstitutionally vague before the

25  conclusion of [the petitioner's] appeal").

26

27  ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
    AND RELATED MOTIONS - 22

28

1    Petitioner argues that his conviction for witness tampering in violation of 18 U.S.C.

2   § 1512(a)(1)(A), (a)(1)(C), (a)(2)(A) and (a)(2)(C) (Count 21) cannot serve as the predicate

3   offense for his conviction for discharging a firearm during and in relation to a "crime of

4   violence" in violation of 18 U.S.C. § 924(c)(1)(A) (Count 22). At its core, petitioner's theory is

5   that witness tampering is not a "crime of violence." A "crime of violence" is a federal felony

6   offense that either "has as an element the use, attempted use, or threatened use of physical force

7   against the person or property of another," 18 U.S.C. § 924(c)(3)(A), or, "by its nature, involves

8   a substantial risk that physical force against the person or property of another may be used in the

9   course of committing the offense," 18 U.S.C. § 924(c)(3)(B). Courts often refer to

10  § 924(c)(3)(A) as the "elements clause" [27] and to § 924(c)(3)(B) as the "residual clause." <u>See,

11  e.g.</u>, <u>United States v. Davis</u>, 139 S. Ct. 2319, 2324 (2019).

12   Although petitioner's COV claim could be viewed as three different claims to the extent

13  it appears in slightly different forms in three different motions to amend or supplement (and by

14  three different counsel for the petitioner), the core theory remains the same. In 2016, petitioner's

15  then-counsel, Arturo Menendez, filed a request to amend the petition based on the decision of

16  <u>Johnson v. United States</u>, 576 U.S. 591 (2015), which held unconstitutional the "residual clause"

17  of § 924(e)(2)(B)'s "violent felony" definition, which is extremely similar to the "residual

18  clause" of § 924(c)(3)'s "crime of violence" definition. Dkt. # 18.[28] Then in 2020, petitioner's

19  then-counsel, Suzanne Lee Elliott, filed a request on amend the petition based on the decisions

20  of <u>United States v. Davis</u>, 139 S. Ct. 2319 (2019) and <u>United States v. Begay</u>, 934 F.3d 1033

21  (2019). Dkt. # 36.[29] The Court considers petitioner's previous motion to amend regarding

22  <u>Johnson</u> (Dkt. # 18), to be subsumed by petitioner's motion to amend regarding <u>Davis</u> (Dkt.

23  # 36), because <u>Davis</u> extended <u>Johnson</u>'s reasoning to the definition of "crime of violence" in

24

25

26  [27] Sometimes this clause is referred to as the "force clause" rather than the "elements clause."
<u>See, e.g.</u>, <u>United States v. Howard</u>, 650 F. App'x 466, 468 (9th Cir. 2016), <u>as amended</u> (June 24, 2016).

27  [28] The government numbered this claim 25. Dkt. # 55 at 36.

28  [29] The government numbered this claim 31. <u>Id.</u>

ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
AND RELATED MOTIONS - 23

1   § 924(c)(3)(B) (holding the "residual clause" of § 924(c)(3)'s "crime of violence" definition

2   unconstitutional). See Davis, 139 S. Ct. at 2324; Nakai v. United States, Nos. CV-16-08310-

3   PCT-DGC, CR-01-01072-01-PCT-DGC, 2021 WL 3560939, at *1 (D. Ariz. Aug. 12, 2021)

4   (explaining that the Supreme Court "extended" Johnson "to the definition of a 'crime of

5   violence' in § 924(c)(3)(B)"). More recently, on July 19, 2021, petitioner's current counsel filed

6   a "Motion to Supplement" regarding the advent of Borden v. United States, 141 S. Ct. 1817

7   (2021). Dkt. # 68. These three motions, Dkts. # 18, # 36, and # 68, all argue that witness

8   tampering in violation of 18 U.S.C. § 1512(a) is not a "crime of violence" for purposes of 18

9   U.S.C. § 924(c)(3). Petitioner's most recent motion to supplement "does not alter the previous

10   arguments presented," but rather cites Borden as further support for its argument that witness

11   tampering is not a "crime of violence" under § 924(c)(3). Dkt. # 68 at 3. The Court characterizes

12   the arguments of Dkts. # 18, # 36, and # 68 as part of petitioner's COV claim.

13         Petitioner cannot succeed on the merits of his COV claim if the "elements clause" of

14   § 924(c)(3) provides adequate support to uphold petitioner's conviction notwithstanding the

15   unconstitutionality of the "residual clause." The pertinent question is thus whether the predicate

16   offense, witness tampering, constitutes a "crime of violence" under the elements clause in

17   § 924(c)(3)(A). To determine whether a specific conviction constitutes a "crime of violence," the

18   Court employs the "categorical approach" set forward in Taylor v. United States, 495 U.S. 575

19   (1990) and Descamps v. United States, 570 U.S. 254 (2013). See United States v. Benally, 843

20   F.3d 350, 352 (9th Cir. 2016).

21         The first task is to identify the relevant elements of the offense under the witness

22   tampering statute: 18 U.S.C. § 1512. This statute is divisible, "i.e., comprises multiple,

23   alternative versions of the crime." Descamps, 570 U.S. at 262. "For instance, § 1512(a)(1)

24   requires proof of a killing or an attempt to kill. Section 1512(a)(2) does not." United States v.

25   Stuker, No. CR 11-096-BLG-DLC, 2021 WL 2354568, at *6 (D. Mont. June 9, 2021), appeal

26   filed, No. 21-35466 (9th Cir.); see also United States v. Music, No. 1:09CR00003-003, 2019

27   WL 2337392, at *5 (W.D. Va. June 3, 2019) (concluding that § 1512 is a divisible statute),

28   appeal filed, No. 19-7010 (4th Cir.). Therefore, the Court uses the "modified categorical

approach" to determine the petitioner's statute of conviction, whereby the Court is permitted to consult the trial record, including charging documents and jury instructions. See Stuker, 2021 WL 2354568, at *9 (applying the "modified categorical" approach to evaluating a witness tampering conviction); Music, 2019 WL 2337392, at *5 (same); Johnson v. United States, 559 U.S. 133, 144 (2010) ("[T]he 'modified categorical approach' . . . permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record—including charging documents . . . jury instructions and verdict forms."). Petitioner's indictment refers to "Title 18, United States Code, Sections 1512(a)(1)(A) and (C) and (a)(2)(A) and (C)." CR Dkt. # 166 at 13. The jury instructions further clarify the matter. The Court instructed the jury as follows:

> The defendant is charged in Count 1 of the Indictment with Witness Tampering, in violation of Title 18, United States Code, Section 1512. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements in one of the two theories below, beyond a reasonable doubt, with all of you agreeing as to which theory the government has proved beyond a reasonable doubt.
> *Theory One:*
> First, on or about May 13, 2008, the defendant knowingly did attempt to kill Martine Fullard as defined in Instruction No. 21; and
> Second, the defendant acted with the intent to prevent the attendance or testimony of Martine Fullard in an official proceeding, to wit: a federal grand jury.
> *Theory Two:*
> You may also find the defendant guilty of the charge of Witness Tampering as charged in Count 1 if the government proves each of the following elements beyond a reasonable doubt:
> First, the defendant knowingly did use physical force against Martine Fullard;
> Second, the defendant acted with the intent to influence, delay, or prevent the testimony of Martine Fullard in an official proceeding, to wit: a federal grand jury.
> You must be unanimous as to which of the two theories above the government has proved beyond a reasonable doubt.

CR Dkt. # 382 at 21. In other words, the relevant elements of 18 U.S.C. § 1512 for petitioner's conviction are set forward below:

ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
AND RELATED MOTIONS - 25

(a)

> (1) *Whoever* kills or *attempts to kill another person, with intent to*—
>> (A) *prevent the attendance or testimony of any person in an official proceeding* . . . .
>
> (2) *Whoever uses physical force* or the threat of physical force *against a*ny *person*, or attempts to do so, *with intent to*—
>> (A) *influence, delay, or prevent the testimony of any person in an official proceeding* . . . .

18 U.S.C. § 1512(a) (emphasis added).

Petitioner contends that witness tampering cannot be a "crime of violence" under the elements clause, § 924(c)(3)(A), "because it does not have as an element the use, attempted use, or threatened use of 'physical force.'" Dkt. # 68. This is plainly untrue for theory two, relying upon § 1512(a)(2), which applies to those who use "physical force against any person."[30] As

---

[30] In a footnote, petitioner articulates his position that § 1512(a)(2) can be employed through reckless conduct because "use of physical force," for purposes of the witness tampering statute, can be accomplished by "physical action against another, and includes confinement." 18 U.S.C. § 1515(a)(2). Dkt. # 71 at 3 n.1. Petitioner's argument lacks support. The cases petitioner cites do not conclude that "physical action against another" or "confinement" fall short of the type of force required for a "crime of violence." Johnson, 559 U.S. 133 (referring neither to the terms "physical action" or "confinement"); United States v. Gutierrez, 876 F.3d 1254 (9th Cir. 2017) (same); Borden, 141 S. Ct. 1817 (same). Based on Borden, the key phrase "against another" modifies the volitional act ("physical action") and demands that the "perpetrator direct his action at, or target, another individual." See Borden, 141 S. Ct. at 1825 (analyzing how "against another" modifies "use of force"). "Reckless conduct is not aimed in that prescribed manner." Id. Although one might argue that the word "confinement" signals something short of a "'volitional' or 'active' employment of force," id., the Court finds persuasive the reasoning of another district court in this Circuit, which concluded that "[b]y referring to 'confinement' in context with 'physical force' and 'physical action,' Congress indicated an act of physically restricting a person's freedom of movement, not merely convincing or cajoling someone to stay put." Stuker, 2021 WL 2354568, at *5.

Additionally, petitioner's first iteration of the COV claim argued that § 924(c)(3) "speaks to the use of 'physical force,' but does not do so in the context of 'violence.'" Dkt. # 18 at 13. Petitioner cited Johnson as interpreting "physical force" under § 924(e)(2)(B)(i) to mean "violent force," in "the context of a statutory definition of 'violent felony.'" Johnson, 559 U.S. at 140. Section 924(c)(3) also refers to "physical force" in the context of a statutory definition employing the concept of violence: a "crime of violence." 18 U.S.C. § 924(c)(3) (emphasis added) ("For purposes of this subsection the term 'crime of violence' means an offense that is a felony and . . ."). Petitioner's argument is not persuasive.

for theory one, relying upon § 1512(a)(1),[31] petitioner argues that "the underlying conviction for witness tampering does not satisfy the [elements clause] because it could [have] been committed through second degree murder, which requires a mens rea of recklessness."[32] Dkt. # 68 at 3 (relying upon Borden); Dkt. # 36 at 9 (arguing that because Begay held "that second-degree murder does not categorically qualify as a 'crime of violence' under Section 924(c)(3), because it can be committed recklessly," that petitioner's conviction must be reversed). The Supreme Court recently held that a criminal offense that requires only a mens rea of recklessness cannot count as a "violent felony" under the elements clause of § 924(e)(2)(B), Borden, 141 S. Ct. at 1821, which is identical to § 924(c)(3)'s elements clause, except that § 924(e)(2)(B)'s clause does not apply to property. Compare 18 U.S.C. § 924(c)(3)(A) with 18 U.S.C. § 924(e)(2)(B)(i).

Petitioner fails to address the government's argument that *attempted* murder establishes the necessary mens rea for a "crime of violence."[33] Under federal law, an attempt to commit a crime requires a "specific intent to commit the crime attempted, even when the statute [does] not contain an explicit intent requirement." United States v. Gracidas-Ulibarry, 231 F.3d 1188, 1192 (9th Cir. 2000) (en banc). And while "a murder may be committed without an intent to kill, an attempt to commit murder requires a specific intent to kill." Braxton v. United States,

---

[31] It is unknown whether the jury based its verdict on theory one or theory two. Thus, the Court must consider both theories.

[32] Petitioner's first iteration of the COV claim argued that killing or attempting to kill a person is not a "crime of violence" for purposes of § 924(c)(3) because "no physical force is required," citing poisoning as an example. Dkt. # 18 at 12. The Supreme Court has rejected the notion that the use of poison does not involve the use of force. United States v. Castleman, 572 U.S. 157, 170–71 (2014). Petitioner's argument must fail accordingly.

[33] Petitioner appears to be under the impression that the underlying murder had to be of the first degree, i.e., premeditated, in order to meet the requisite mens rea for a "crime of violence," see Dkt. # 71 at 2–3 (complaining that "the jury was not instructed that the underlying murder had to be premeditated"), but petitioner neglects to consider the import of what it means to *attempt* to commit murder. Petitioner's citation to recent unpublished post-Borden Ninth Circuit decisions is unavailing, see Dkt. # 71 at 3–4, because these decisions concern the offense of second degree murder, not the offense of attempt to commit murder. United States v. Young, No. 19-50355, 2021 WL 3201103 (9th Cir. July 28, 2021); United States v. Mejia-Quintanilla, 857 Fed. App'x 956 (9th Cir. 2021).

500 U.S. 344, 351 n.* (1991). Thus, in order for petitioner to have been convicted under theory one, the jury was required to find that petitioner intended to kill Ms. Fullard. See CR Dkt. # 382 at 22 ("To establish the first element of Theory One in Instruction No. 20, that the defendant knowingly did attempt to kill Martine Fullard, the government must prove each of the following elements beyond a reasonable doubt; First the defendant intended to kill Martine Fullard."). The Court finds that committing witness tampering by attempting to kill a person is categorically a "crime of violence" under § 924(c)(3)'s elements clause. See Music, 2019 WL 2337392 at *5 (finding that "committing federal witness tampering by attempting to kill a person is categorically a crime of violence" under § 924(c)(3)'s elements clause); West v. United States, Nos. 2:16-cv-05666, 2:07-cr-00052, 2019 WL 6873009, at *6 (S.D.W. Va. July 31, 2019) (recommending that the presiding District Judge find that witness tampering via "killing or attempted killing, is a crime of violence" under § 924(c)(3)'s elements clause), report and recommendation adopted, Nos. 2:16-cv-05666, 2:07-CR-00052, 2019 WL 4132437 (S.D.W. Va. Aug. 29, 2019), appeal dismissed, No. 19-7613, 2020 WL 2036594 (4th Cir. Feb. 12, 2020). Therefore, the Court finds that the elements clause provides adequate support to uphold petitioner's conviction. Because Dkts. # 18, # 36, and # 68 are all part of petitioner's COV claim, which cannot succeed on the merits, the Court DENIES these motions to amend accordingly.

## VI.    MOTION FOR DISCOVERY (DKT. # 28)

Petitioner seeks discovery of phone records of Detective Mooney pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings (Dkt. # 28). Under Rule 6(a), "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Rule 6(a), Rules Governing Section 2255 Proceedings. Because the Court denies all of the motions to amend containing claims regarding Detective Mooney (claims 8–10, 19), where such claims did not satisfy the "relation back" standard, see supra Parts V.A, V.C, petitioner would be unable to demonstrate that he is entitled to relief using the discovery he seeks. Therefore, the Court finds

that no good cause exists to authorize the discovery requested, and the Court DENIES petitioner's motion seeking discovery (Dkt. # 28).

## VII.   CONCLUSION

In the interest of clarity, the Court summarizes its rulings in the table below:

| Dkt. # | Filing Party | Brief Description | Date of Filing | Counseled or Pro Se | Status |
|--------|--------------|-------------------|----------------|---------------------|--------|
| 1 | Petitioner | § 2255 Petition | 6/24/14 | Counseled | Denied |
| 4 | Petitioner | Motion to Amend Petition | 7/11/14 | Counseled | Denied |
| 9 | Petitioner | Motion to Amend Petition | 9/19/14 | Pro Se | Denied |
| 11 | Petitioner | Motion to Amend Petition | 9/29/14 | Pro Se | Denied |
| 18 | Petitioner | Motion to Amend Petition | 6/24/16 | Counseled | Denied |
| 22 | Petitioner | Motion to Amend Petition | 11/30/17 | Pro Se | Denied |
| 23 | Petitioner | Motion to Amend Petition | 11/30/17 | Pro Se | Struck |
| 24 | Petitioner | Motion to Amend Petition | 12/4/17 | Pro Se | Struck |
| 27 | Petitioner | Motion to Amend Petition | 12/21/17 | Pro Se | Denied |
| 28 | Petitioner | Motion for Discovery | 12/21/17 | Pro Se | Denied |
| 36 | Petitioner | Motion to Amend Petition | 1/6/20 | Counseled | Denied |
| 39 | Petitioner | Motion to Amend Petition | 2/3/20 | Pro Se | Struck |
| 50 | Petitioner | Motion to Amend Petition | 5/1/20 | Pro Se | Struck |
| 51 | Petitioner | Motion to Amend Petition | 5/11/20 | Pro Se | Struck |
| 52 | Petitioner | Motion to Withdraw Argument regarding Plea Agreement | 6/15/20 | Pro Se | Struck |
| 56 | Petitioner | Motion to Amend Petition | 6/26/20 | Pro Se | Struck |
| 59 | Petitioner | Motion for Extension of Time to File Reply to Omnibus Response to Petition | 7/27/20 | Pro Se | Struck |
| 68 | Petitioner | Motion to Amend Petition | 7/19/21 | Counsel | Denied |
| 70 | Government | Motion for Leave to File Late Response (and Response to Dkt. # 68) | 8/23/21 | Counsel | Granted |

DATED this 12th day of November, 2021.

*Robert S Lasnik*

Robert S. Lasnik
United States District Judge

ORDER ON PETITIONER'S 28 U.S.C. § 2255 PETITION
AND RELATED MOTIONS - 29